IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN DAVID BERRETT, ) <br> ) <br> Defendant. ) <br> _____) | Case No. 4:15 CR 336 CDP |

## WORLD WIDE TECHNOLOGY, INC.'S MEMORANDUM
## IN SUPPORT OF MOTION TO QUASH

COMES NOW non-party World Wide Technology, Inc. ("WWT"), by and through its undersigned counsel and pursuant to Rule 17 of the Federal Rules of Criminal Procedure, and hereby submits this Memorandum in Support of its Motion to Quash the Subpoena to Testify at a Hearing or Trial in a Criminal Case (the "Subpoena") served upon it by Defendant John David Berrett ("Defendant").

## INTRODUCTION

Defendant has been charged with five counts of wire fraud for falsely and fraudulently redirecting more than $476,000.00 of WWT's funds for his personal use between September 16, 2013 and October 21, 2014. Among other things, Defendant has been accused of using this money to pay strippers, purchase large gifts for strippers, and to buy a sexual device for himself. To conceal his illegal scheme, it is alleged that Defendant submitted expense reports to WWT in which he falsely claimed he was purchasing training materials, computer networking supplies, and traveling to meet with, train, and entertain WWT business partners. Further, it is alleged that Defendant falsified invoices and submitted them, along with legitimate expenses, in his reports

1

to WWT, making it appear he purchased materials and assistance from legitimate vendors. Trial is currently scheduled for April 18, 2016.

On January 25, 2016, WWT received Defendant's Subpoena seeking over *12 years* of documents relating to *18 different WWT employees*. Specifically, the Subpoena calls for **"any and all documents relating to the employee files, company credit cards and expense reports" of 18 WWT employees from January 2004 to the present**. In addition, Defendant seeks **"any and all internal audits and investigations conducted by the company for the [18] employees listed"** in the Subpoena. Defendant also seeks **"any employee files for any and all employees who have been terminated as a result of these internal audits or investigations."** A true and correct copy of the subpoena is attached hereto at <u>Exhibit 1</u>.

In order to respond to the Subpoena, WWT would be required to expend literally hundreds and hundreds of employee hours and an unreasonable amount of resources to search for, retrieve, and review documents sought in the Subpoena, which WWT submits are wholly irrelevant to the case at hand. Accordingly, as set forth below, WWT respectfully asks this Court to quash the Subpoena.

## **ARGUMENT**

It is well-established that a subpoena issued pursuant to Federal Rule of Criminal Procedure 17 should be quashed if the subpoenaing party fails to identify the records with specificity, or fails to establish that the requested records are relevant, material, and admissible. *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000); *United States v. McGrady*, 508 F.2d 13, 18 (8th Cir. 1974). Even if the subpoenaing party demonstrates the minimal requirements for relevance, admissibility, and specificity, the district court should still quash the subpoena if

compliance would be "unreasonable or oppressive, or if it seeks irrelevant or privileged matter." *McGrady*, 508 F.2d at 18; *Hardy*, 224 F.3d at 756.

Here, Defendant cannot meet even the minimal requirements of relevance, admissibility, and specificity. WWT has been victimized already by Defendant's conduct here, and requiring WWT to respond to and comply with such an overly broad and burdensome third party subpoena would simply serve to further victimize WWT.

1. **The Subpoena Should be Quashed Because Defendant has failed to show that the requested documents are relevant, and has failed to identify the records with specificity.**

Subpoenas under Rule 17 may not be used as a discovery device or as a blind fishing expedition seeking unknown evidence. *United States v. Nixon*, 418 U.S. 683, 698-700 (1974); *Hardy*, 224 F.3d at 756. That is precisely what Defendant is using the Subpoena for here.

In order to require production, Defendant must show that "the documents are evidentiary and relevant," and that the Subpoena is not intended "as a general fishing expedition." *Nixon*, 418 U.S. at 698-700. "As a general rule, requests for 'any and all documents' are emblematic of a discovery request or of a fishing expedition." *United States v. Shanahan*, 252 F.R.D. 536, 541 (E.D. Mo. 2008). Moreover, subpoenas that do nothing more than request a "broad array and a large number of documents" should be quashed. *Id.*

The law is clear that "the defendant must seek access to a discrete document or a discrete set of existing written materials," which are directly relevant to the case at hand. *Id.* "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Id.* at 540. To ensure that the defendant is not using the subpoena to see "what may turn up," "[t]he specificity and relevance requirements demand more

than the title of a document and conjecture concerning its contents." *Hardy*, 224 F.3d at 755; *Shanahan*, 252 F.R.D. at 541 (citation omitted). These requirements ensure that the "subpoena will only be used to secure, for trial, a sharply defined group of documents." *Id.*

On its face, Defendant's Subpoena fails to meet the minimum requirements concerning relevancy and specificity as it calls for "any and all documents" concerning 18 different WWT employees. *See Shanahan*, 252 F.R.D. at 541 ("[R]equests for 'any and all documents' are emblematic of a ... fishing expedition.") Moreover, Defendant has failed to identify any specific document needed and cannot reasonably specify the information contained or believed to be contained in the documents sought.

To address these issues, following receipt of the Subpoena WWT's undersigned counsel contacted Defendant's counsel and asked that the Subpoena be withdrawn, given the lack of specificity and breadth of the Subpoena. When Defendant's counsel refused to withdraw the Subpoena, WWT's counsel asked for Defendant's counsel to provide a good faith basis for the scope and breadth of the Subpoena. In response, Defendant's counsel advised via email that they "believe the documents [they] subpoenaed from WWT contain[] exculpatory evidence to support [Defendant's] theory of the case and also [Defendant's] defenses." Defendant's counsel referenced a conversation with WWT's General Counsel where she purportedly advised that WWT had performed an internal "scrum" and employees were terminated as a result. Thus, Defendant's counsel opines that the Subpoena will adduce "exculpatory material." A true and correct copy of the February 9, 2016 email from Defendant's counsel is attached hereto at Exhibit 2.

Although Defendant has failed to actually identify any specific information believed to be contained in the documents sought, it is WWT's understanding, from various telephone

conversations between the undersigned counsel and Defendant's counsel, that Defendant is attempting to suggest that other WWT employees misused WWT's funds for their own personal gain and that WWT accepted and encouraged such conduct. During the above-referenced conversation between Defendant's counsel and WWT's General Counsel, WWT's General Counsel made it clear to Defendant's counsel that WWT conducted a very thorough internal investigation upon learning of Defendant's conduct, that internal investigation revealed that no other WWT employee was engaged in the conduct that is subject to this case, and no other WWT employee was terminated as a result of that internal investigation. WWT's General Counsel further advised Defendant's counsel that misusing WWT's funds is neither accepted nor tolerated at WWT. WWT's General Counsel specifically informed Defendant's counsel that such conduct would result in termination of employment.

WWT's undersigned counsel has also assured Defendant's counsel that, if WWT was aware of any information that could in the broadest sense be considered as "exculpatory" and in favor of Defendant, WWT would have provided that information to the government and Defendant. The undersigned has advised Defendant's counsel that, to this date, WWT is not aware of any such exculpatory information. Nonetheless, Defendant still maintains that it should be given unfettered access to years and years' worth of WWT's confidential employee files, internal finances, internal audits, and internal investigations for 18 employees in hopes of finding something that can be used to mask the indefensibility of Defendant's flawed theory of defense by muddying the waters with wholly irrelevant documents. Defendant's fishing expedition is improper and should not be condoned. *See Shanahan*, 252 F.R.D. at 541; *Hardy*, 224 F.3d at 755. For these reasons, the Subpoena should be quashed.

### 2. The Subpoena Should be Quashed Because the Subpoena is Overly Broad, Unduly Burdensome, Oppressive, and Seeks the Disclosure of Confidential Information.

Even assuming *arguendo* that the documents sought may be relevant, which WWT vehemently challenges, the Subpoena should still be quashed because compliance with the Subpoena would be unreasonable and oppressive, and would result in the disclosure of thousands of documents, most of which consist of sensitive personnel records and confidential company documents. *See Shanahan*, 252 F.R.D. at 540 ("A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the subpoena calls for privileged matter.").

WWT should not be required to expend an unreasonable amount of time and resources to obtain access to the documents sought in the Subpoena, and to review those documents which are wholly irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Any tenuous relevancy is outweighed by the burden and expense imposed on WWT, the victim and a non-party here. This is particularly true because WWT has already turned over all pertinent records to the government over a year ago. WWT presumes these records have been turned over to Defendant in discovery.

Because Defendant has not shown – and cannot show – a particularized need for the broad swath of confidential and sensitive information sought from WWT, which would impose significant burden, hardship, and expense on WWT, Defendant's Subpoena should be quashed.

### CONCLUSION

For the reasons stated herein, WWT respectfully requests that the Court grant its Motion to Quash, and grant such other and further relief as the Court deems appropriate under the circumstances.

Dated: February 22, 2016  Respectfully submitted,

By: /s/ *Hal A. Goldsmith*
Hal A. Goldsmith, #32984
Alicia E. Ragsdale, #66168
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)
hal.goldsmith@bryancave.com
ali.ragsdale@bryancave.com

*Counsel for WWT*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of February, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send such notification to all counsel of record.

/s/ *Hal A. Goldsmith*