UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:15 CR 336 CDP |
| JOHN DAVID BERRETT, | ) ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S SENTENCING MEMORANDUM AND NOTICE OF EXPECTED TESTIMONY AT SENTENCING**

COMES NOW the United States of America by and through its attorneys, United States Attorney for the Eastern District of Missouri, and Kenneth R. Tihen, Assistant United States Attorney for said District, and hereby files its memorandum related to sentencing and states that the Government may call FBI Special Agent Eric Mills at the sentencing hearing, whose testimony will take approximately thirty (30) minutes. Among other relevant sentencing issues the government offers the following information, in addition to information submitted in its Objections to the Presentence Report filed June 7, 2016 [(Doc. # 39] to the court for the purposes of sentencing.

Defendant was employed by World Wide Technology (WWT) for approximately ten years. Defendant was a Senior Engineer and National Solutions Architect and served as an integral member of a national team tasked with preparing an extensive bid to win a large governmental contract. Defendant, who lived in the Phoenix, Arizona, area and worked from home, was given significant autonomy in assisting the team and preparing his portion of the overall bid. Operating with such autonomy, defendant, with minimal oversight, was able to

1

schedule his own travel, attend training, and purchase training materials such as books, manuals, and tutorials to assist the team in preparing and submitting WWT's bid for the government contract.

During the preparation of the bid, defendant incurred costs and submitted expense reports with receipts and other financial documentation consistent with his position and employment. As a ten-year employee working remotely, defendant was trusted by his supervisors at WWT to submit reimbursement requests only for expenses associated with his employment and work on the pending government contract bid. Defendant used his employer's trust in him, his work-from-home arrangement, and lack of daily direct managerial oversight to his advantage as he defrauded WWT.

Defendant's scheme included submitting expense reports at or near deadlines. This fact is significant in that defendant's manager was under time constraints to approve defendant's claimed expenses and the short deadlines created by defendant's last-minute expense report submittals did not allow adequate time for review. Given the last minute submissions and time constraints, defendant's manager often would approve the expenses after only a cursory look because he trusted defendant to prepare them accurately.

Defendant's fraud scheme and the lengths to which he went to conceal it required substantial amounts of time, record keeping, and the creation of approximately 140 fake invoices. Defendant utilized sophisticated means to create false invoices from real or real-sounding companies to make it appear he had incurred and was requesting reimbursement for legitimate expenses. The fraudulent invoices were repeatedly created using graphics and letterheads which appeared to be legitimate.

During the fraudulent scheme, defendant generated invoices using approximately 28 vendor names to support his expense report submittals. At times, defendant created invoices in the name of a legitimate WWT vendor but for a nonexistent expense. At other times, defendant invented fictitious but legitimate-sounding vendor names such as "MFC Consulting" to generate what appeared to be legitimate invoices. After preparing fraudulent invoices and receipts, defendant uploaded his expense reports and the accompanying fake documentation via a computer at his home to WWT for payment.

After defendant discovered that the on-line stripper service My Free Cams (MFC) took as its fee nearly half the value of the tips he paid to the strippers, defendant began to instead utilize PayPal to send money and gifts to strippers. Utilizing PayPal, defendant sent money directly to strippers without going through the MFC website, ensuring they received all of the money he sent instead of only half of the value of the tips.

With regard to defendant's purported purchases from Amazon.com, it was determined the majority of his expense report submissions were fraudulent. Approximately 172 Amazon.com invoices submitted with defendant's expense reports were determined to be fraudulent. In many cases, defendant submitted reimbursement receipts for Amazon.com purchases which simply did not exist. In other cases, defendant did use his WWT-issued company credit card to make purchases from Amazon.com, but the purchases were for gifts sent to strippers and not business expenses as reflected in the invoices he submitted with his expense reports.

Defendant also submitted reimbursement expenses he claimed were related to entertaining clients at restaurants when in fact on one occasion, one of the clients present paid for the group outing himself and claimed the reimbursement through his own company.

At times, defendant utilized his own personal credit card to tip online strippers or purchase gifts for them and created corresponding fake receipts to submit to WWT for reimbursement as a business expense. Use of personal credit cards to incur business expenses was not normally allowed at WWT because the company had no way of comparing the claimed expenditures against itemized company credit card billing statements. Because of the level of trust WWT placed in defendant, he was permitted to submit his expense reports and necessary receipts to obtain reimbursement when his personal credit card was used.

Another method defendant used to defraud his employer and use company funds for personal matters was his use of the company credit card to purchase first class airline tickets for his legitimate business-related travel. Defendant would submit the originally purchased first class airfare for reimbursement, but later (and prior to his trip), exchange the expensive first class ticket with the airline directly for a coach class ticket and travel credit for the difference. Defendant then used that travel credit to purchase airline tickets either for his personal travel to meet with women he had met online or for tickets for them to fly to meet him at different destinations.

Defendant repeatedly employed these sophisticated techniques to defraud his employer WWT over the course of more than one year.

After WWT submitted its bid to win the large government contract, no further expenses should have been incurred by any of the members of the national team. Defendant, however, continued to submit reimbursement expenses which he attributed to the national project. In October 2014, defendant submitted an expense report to his manager for expenses allegedly related to the project bid which had already been submitted to the governmental agency.  The expense report contained pages and pages of alleged expenses.

Defendant was contacted by his employer to discuss the late expenses. When questioned about the expenses, defendant lied about their origin. Company officials also questioned defendant about an item they discovered in one of defendant's expense reports with a notation indicating the expense was a "bribe" (in reality, he had purchased wine for a stripper). WWT's main concern was any kind of bribe paid to facilitate preparation of WWT's bid to the government agency would invalidate their proposal. Again, defendant was not forthcoming with truthful information about the questioned payment. Lastly, company officials questioned defendant about thousands of dollars in expenses he charged to his company credit card to a vendor called "MFC" which they discovered was an online stripper service, not a legitimate WWT vendor. Defendant continued to lie to company representatives about the expenses. Ultimately, during a conference call, defendant admitted to the fraud claiming he had a pornography addiction. In the following days, company officials conducted an extensive audit of defendant's company credit card use and expense reports and discovered his fraud included visits with strippers and substantial payments and gifts to strippers.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*s/Kenneth R. Tihen*
KENNETH R. TIHEN, #37325
Assistant United States Attorney
111 South Tenth Street, Rm 20.333
St. Louis, MO 63102

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*s/Kenneth R. Tihen*
Assistant United States Attorney